IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF YORK,

ARGUED AT APRIL TERM, 1843.

---

## John Spring & al. versus Elisha Hight & al.

That a husband, when creditors will not thereby be defrauded, may voluntarily, and without pecuniary consideration, convey a portion of his estate in trust for the benefit of and by way of advancement to his wife, there can be no doubt in a court of equity.

And if he thinks proper to pay for an estate, and to direct the conveyance of it to be made to her, in the absence of any intention, manifested at the, time to the contrary, it will be presumed to be for an advancement to her.

Where a conveyance of land was made to a third person, by order of one in trust for his wife, although not so expressed in the deed, and afterwards the estate was by the verbal direction of the husband transferred to the wife, it was held, that after the death of the wife, the estate could not be reclaimed from her heirs by the husband, or his heirs.

THIS was a bill in equity, brought by Seth Spring, and was heard on bill, answer and proof. After the answer was made, the proof taken, and an argument thereon, Seth Spring died, and the heirs at law did not come in until the Judges who had heard the argument, had gone out of office without coming to a decision. The case was again argued at the April Term, 1843.

The bill asserted that the plaintiff bargained with one Adams for a tenement; that he requested E. Hight, one of the de-

fendants, to become surety for him for the purchase money; that he did so; that Adams, on August 19, 1831, conveyed the tenement to E. Hight, at the request of Seth Spring, as security for signing the note as surety, and in trust for Spring; that before this Spring had married Hight's mother, and that she has since died, leaving the defendants her heirs at law; that Spring paid the consideration money; that during the life of Mrs. Spring, E. Hight conveyed the tenement to his mother, Mrs. Spring, to hold the same to her and to her heirs and assigns; that in October, 1834, Mrs. Spring died; that the defendants, her heirs, refuse to convey the tenement to the plaintiff, or to account to him for the profits thereof; and prays that they may be compelled to convey to him.

The several defendants, excepting E. Hight, merely allege, that their deceased mother appeared to have good title to the premises from E. Hight; and that as to all the other matters alleged, they are ignorant; and pray that the said Spring may be held to prove them, and to maintain his bill.

E. Hight, in his answer, alleged that Spring requested him to be his surety to Adams for the purchase money, and informed him, that the tenement should be the property of his mother, and wished him to take a deed of the same to hold for his mother's use; that he did sign the note to Adams and take a deed to himself at the request of Spring, with the verbal agreement that he should hold the premises for his own security and for the benefit of his mother; that afterwards, on Dec. 19, 1834, at the express request of Spring, and in pursuance of the original intent and declared design of said Spring, and with his full knowledge and approbation at the time, he, the said Hight, conveyed the same to his mother, to hold to her and to her heirs and assigns; that although Spring paid the note, that said Hight expended a large sum of his own money with the knowledge of said Spring in repairs upon the premises, fully believing the same to be the property of his mother; that during the life of his mother, who was many years younger than said Spring, the latter always spoke of the property as belonging to her; and wholly denied that there

was ever any agreement or understanding, that the premises should be held in trust for Spring, or that he should ever have any interest in the premises, unless such as the law gave him, as her husband, on the conveyance to her.

The proof is sufficiently stated in the opinion of the Court.

*Fairfield,* for the plaintiffs, among other grounds, contended :

E. Hight did not hold for himself, but for some one. Seth Spring paid the consideration money, and the conveyance was made to E. Hight at his request. The law in such case raises a resulting trust to him, who paid the consideration. No trust can be raised by law in her favor, and there was none in her favor by deed or writing. The case of *Buck* v. *Pike,* 2 Fairf. 9, is directly in point, and conclusive in our favor.

When the deed was given to Mrs. Spring, she knew all the facts, and of course had knowledge of the trust. She then took the estate as her son had held it, in trust for her husband. 1 Sch. & L. 379 ; 2 Vern. 271 ; 1 Johns. C. R. 566 ; 1 Cranch, 100 ; 2 Mad. Ch. 127 ; Jer. Eq. 20 ; 2 Story's Eq. 242.

The wife may be a trustee for her husband. 2 Story's Eq. 600 ; Reeves' Dom. Rel. 120 ; 2 Johns. C. R. 537 ; Jer. Eq. 21.

The trust fell with the estate to her heirs. 2 Story's Eq. 242.

*J. Shepley,* for the defendants, said that on the plaintiffs' own allegations the bill could not be maintained. It insists that the conveyance was made to Hight, to secure him for becoming surety to Adams for the whole purchase money. The attempt then is to change an absolute conveyance into a mortgage by parol proof. This cannot be done by the parties, where no creditors are defrauded ; and neither that, nor any other fraud is pretended here. *Thomaston Bank* v. *Stimpson,* in Lincoln, (21 Maine R. 195.) The bill does not allege, or pretend, that the conveyance by E. Hight to his mother, and to her heirs, was made without the knowledge and approbation of Spring.

But however this may be, the answer, which is fully supported by the proof, furnishes a complete defence. The property was given by the husband to the wife. This was done first by the conveyance to E. Hight to hold for her, and then by the conveyance directly to her by direction of her husband. Such gift cannot be reclaimed by Seth Spring, nor by his heirs. A similar conveyance by the husband and wife of the land of the wife, as a gift to the husband by the wife, has been held good. *Durant* v. *Ritchie*, 4 Mason, 45.

It would be difficult to defend all that is said in the opinion in *Buck* v. *Pike*. But there is nothing said, which supports the position contended for in this case, and which is necessary to enable the plaintiff to prevail. Even that case requires, in order to raise a resulting trust by parol in favor of him who pays the consideration money, when the conveyance is to a third person, not only that he should pay it, but that the conveyance should be made by the grantor, and accepted by the grantee, to hold for the benefit of the person thus paying. There is nothing in that case, conflicting with the well settled principle, that a man may give away his money or his land, to his wife, or to his child, or to a stranger, provided that creditors do not interfere, and require it for the payment of debts.

The opinion of the Court, SHEPLEY J. not sitting in the case, was drawn up by

WHITMAN C. J. — The answer of the defendant, Elisha Hight, if true, is sufficient to bar the plaintiffs' right to prevail in this suit. That a husband, when creditors will not thereby be defrauded, may voluntarily, and without pecuniary consideration, convey a portion of his estate in trust for the benefit of, and by way of advancement, to his wife, there can be no doubt. And if he thinks proper to pay for an estate, and to direct the conveyance of it to be made to her, in the absence of any intention, manifested at the time to the contrary, it will be presumed to be for an advancement to her. 2 Story's Eq. § 1204.

The answer of Elisha Hight is explicit, that the conveyance

was made to him, by order of the plaintiffs' ancestor, in trust for his wife, and that by his direction afterwards, the estate was transferred to her. This answer must be taken to be true, unless it be overcome by controlling evidence. Until the death of the wife nothing transpired, that could, in the slightest degree, tend to show that the conveyance was not intended to be in accordance with the implication of law, and the statement in the answer of Elisha Hight; but, on the other hand, much appears in confirmation of it. The declarations of the husband were often reiterated, that the conveyance was to secure a home for her after his decease.

If on making the conveyance, in the first instance, to Hight, nothing had been said to the contrary, and it should appear that the consideration moved wholly from the plaintiffs' ancestor, a trust for his benefit would have been implied; but this was not the case; the consideration did not come wholly from him; and the object of the conveyance was declared at the time; and the declaration was inconsistent with any implied trust for the benefit of the ancestor. The testimony of the witness, Goodwin, would seem to render it unquestionable, that the ancestor must have designed what the conveyance to the wife imports. He says the ancestor had requested him to prepare a deed, conveying the estate to his wife; and that, when so prepared, the delivery of it to her took place in her husband's presence; who did not intimate, it seems, that the conveyance was to be made in any part to himself, or for his benefit. If it had been intended that it should convey only a life estate to her, and a reversion to him, or his heirs, how could it have happened, that he should have omitted so to express himself to the scrivener? If it had been intended to be for his benefit, as well as for hers, the deed should have been made to him and her jointly, with the proper reservations and limitations. But he did not apply for a deed to be made running to any one besides his wife. Having been present also at the delivery of the deed, and having then made no question of the propriety of what was done; there cannot remain a reasonable doubt that the conveyance was as he intended it should

be. The answer, therefore, of Elisha Hight is very far from being controlled by the balance of testimony in the case. His conduct, after the decease of the wife, cannot be allowed to have any effect, by way of impairing the title vested in her, although he may be one of her heirs. It is not uncommon for persons to misapprehend their rights in reference to their titles to real estate, and to express themselves, and even conduct unadvisedly in regard thereto; and such expressions or conduct are by no means to be allowed to be conclusive upon them.

*Bill dismissed.*